```
 1              IN THE UNITED STATES DISTRICT COURT

 2             FOR THE EASTERN DISTRICT OF TEXAS

 3                     MARSHALL DIVISION

 4   ALEXSAM, INC.           )(

 5                           )(   CIVIL DOCKET NO.

 6                           )(   2:07-CV-288-TJW

 7   VS.                     )(   MARSHALL, TEXAS

 8                           )(

 9   EVOLUTION BENEFITS,     )(   NOVEMBER 24, 2009

10   INC., ET AL.            )(   9:20 A.M.

11                     PRE-TRIAL HEARING

12             BEFORE THE HONORABLE JUDGE JOHN WARD

13                UNITED STATES DISTRICT JUDGE

14

15   APPEARANCES:

16

17   FOR THE PLAINTIFF:   MR. JAMES FOSTER
                          MR. ALLEN RUGG
18                        MR. GERALD HRYCYSZYN
                          Wolf Greenfield & Sacks
19                        600 Atlantic Ave
                          Boston, MA 02210
20

21   COURT REPORTER:     MS. SHELLY HOLMES, CSR
                         Deputy Official Court Reporter
22                       2593 Myrtle Road
                         Diana, Texas  75640
23                       (903) 663-5082

24

25   (Proceedings recorded by mechanical stenography,
```

transcript produced on a CAT system.)

```
 1   FOR THE DEFENDANT:   MR. MICHAEL SPEED
                          MR. JEFFREY STANDLEY
 2                        Standley Law Group LLP
                          6300 Riverside Drive
 3                        Dublin, OH 43017

 4
                          MR. CLAUDE WELCH
 5                        Law Office of Claude E Welch
                          P.O. Box 1574
 6                        Lufkin, TX 75902

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1                          I N D E X

2

3   November 24, 2009

4                                                 Page

5       Appearances                             1

6       Hearing                                 3

7       Court Reporter's Certificate            58

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                  COURT SECURITY OFFICER:  All rise.

 2                  THE COURT:  Please be seated.

 3                  All right.  We have a pretrial this morning

 4       in Alexsam versus Evolution Benefits and Humana,

 5       2:07-288.

 6                  What says the plaintiff?

 7                  MR. FOSTER:  Your Honor, James Foster is

 8       here with Allen Rugg and Gerald Hrycyszyn.

 9                  THE COURT:  Are you ready to proceed?

10                  MR. FOSTER:  Yes, Your Honor.

11                  THE COURT:  All right.  Defendant?

12                  MR. WELCH:  Good morning, Your Honor.

13       Claude Welch, on behalf of Defendant Humana, Inc., and

14       we are ready to proceed, Your Honor.  At counsel table

15       with me this morning, Your Honor, is Mike Speed and Jeff

16       Standley who will be making the presentation this

17       morning.

18                  THE COURT:  Okay.  Now, Evolution Benefits,

19       they're out of the case?

20                  MR. WELCH:  Yes, Your Honor.

21                  THE COURT:  All right.  I just realized I

22       read both their names.

23                  All right.  We're going to -- we'll get into

24       these motions in just a little bit.  We're going to

25       select a jury in this case on the 30th.  As far as I
```

1    know, you'll be the first jury.  And I think I'm down to

2    selecting two juries now next -- so we'll go ahead and

3    pick your jury Monday morning, first jury.

4             You can -- if you're interested, you can get

5    a list of the prospective jurors tomorrow at noon in the

6    clerk's office.

7             I believe -- now, I'll give you 30 minutes a

8    side for voir dire.  Mr. Rugg's been here before.  Of

9    course, Mr. Welch has been around a long time, maybe as

10   long as I have, and -- but so you'll under -- I'll make

11   you aware of the way this works.  The jurors will

12   come -- will be seated in the jury box on this first

13   bench and then a couple of rows.  It will probably be

14   about 26 or 28 potential jurors.

15            Each juror, after I make some initial

16   remarks to them and talk a little bit about the patent

17   case, each juror will stand, and there's a series, I

18   believe, of nine questions that they have that will be

19   on the screen.  Ms. Dupree will make you a copy of what

20   those questions are.  Each will stand and will give that

21   information in turn, and after we've done that, then

22   plaintiff will have up to 30 minutes a side to ask

23   additional questions.  Each side will have an additional

24   30 minutes.

25            And then you'll have the opportunity to --

1   we'll approach and have the opportunity to identify any

2   jurors that you wish to have individual voir dire of if

3   there's something that's come up.  I will encourage the

4   jurors to make full and complete disclosure about

5   themselves and answer any of your questions, and if

6   something comes up that causes you to believe that you

7   need individual voir dire, if you'll indicate that to

8   me, well -- or I may interrupt you and say, "We'll take

9   that up further with the Court."  Then we'll take --

10   we'll take up those individual voir dires.

11          And then you will have the opportunity to

12   exercise your strikes.  I will seat 10 jurors.  Each

13   side will have four strikes, peremptory strikes, after

14   you've made your challenges for cause and I've given you

15   a ruling on those, so that you'll know what your panel

16   ultimately will be striking from.

17          And so then we will come back and commence

18   trial on the morning of December 7th at 8:30.  Go from

19   8:30 until -- you know, have a break in the morning,

20   hour, hour and 15 minute lunch, break in the afternoon,

21   and then quit not later than 5:30, generally.  That's a

22   pretty full day.

23          And we discussed -- the more I look at this

24   case, I'm still -- I don't quite understand why y'all

25   need about -- more than about 10 hours a side to try

1   this lawsuit.  Is there some reason that -- I still

2   don't understand it.

3            MR. STANDLEY:  Your Honor, Jeff Standley on

4   behalf of Humana.  Just looking at our witnesses and who

5   we intend to call and the amount of time, we were hoping

6   to persuade you to go to 14 hours per side.

7            THE COURT:  I just don't see it.  You know,

8   I tried a patent case last week, and one side -- you

9   know, I gave them 12 hours a side.  We were out of here

10  in 17 hours.

11           MR. STANDLEY:  Your Honor, we would take 12

12  hours per side.

13           THE COURT:  I'm sure you would, but that was

14  a different case, Counselor.  That had two -- that had

15  an additional claim of unfair competition in it that you

16  don't have in this case.  Oh, I don't know, you'd take

17  12 hours a side?

18           MR. STANDLEY:  Your Honor, I might add, I

19  know we're going to be talking about this in the next

20  few minutes, but the other side has made several

21  objections to evidentiary documents.

22           THE COURT:  Oh, we're going to talk about --

23  we're going to have all that taken care of because y'all

24  are going to meet back here on March 3rd in front of

25  Judge Everingham to take up all these evidentiary

1    objections.  March -- I mean, December the 3rd.  March,

2    senior moment, I guess.  December 3rd at 9:30.  That's

3    the way we do all of our cases.  All of -- 95 percent of

4    the objections to the documents will have been resolved

5    to the extent I don't resolve some here today by some of

6    these rulings on the motions in limine.

7           So you'll have an exhibit list with --

8    generally it's a hundred percent, but there's sometimes

9    some documents I've just got to hear some testimony on.

10   And so all of that will be done ahead of time.  So

11   all -- we just -- we won't waste any time in front of

12   the jury as far as foundation-type questions.

13          MR. STANDLEY:  And that will certainly help

14   us get this down to 12, Your Honor.

15          THE COURT:  I'll get you down to 10 now.

16   You talked me down to -- you were talking about 14 when

17   you were talking about the evidentiary objections.

18          Mr. Rugg, can't you -- don't you think you

19   can get it done in 10 or not?

20          MR. RUGG:  Oh, we're pretty confident we can

21   do it in 10, Your Honor.

22          THE COURT:  Well, unless something unusual

23   comes up, I'm going to leave it at 10, unless Judge

24   Everingham tells me, "Oh, no, you've made a mistake.  I

25   think you ought to give them 12."  So it's 10 hours a

1  side.

2          And I should tell you, I anticipate us

3  getting the case to the jury either on the Thursday

4  afternoon of that week or at the very latest on Friday

5  morning, and Judge Everingham, if the jury deliberates

6  past noon, Judge Everingham will -- is there any

7  objection from the plaintiff of Judge Everingham being

8  the one that preside --- that handles the jury

9  deliberations?

10          MR. FOSTER:  None, Your Honor.

11          THE COURT:  Anything from the defendant?

12          MR. WELCH:  No, Your Honor.

13          THE COURT:  Okay.  I've stated this on the

14  record before, you know, but the Court, it is well known

15  that I have this addiction to shotguns and bird dogs and

16  quail, and so I'm leaving -- wanting to leave at 1:00

17  o'clock that day to travel with my son to go hunting.

18  So that's -- I'll just fess up on the record.  I'm

19  not just -- I'm just taking care of my addiction.

20  That's all I can tell you about that.

21          Now, then, you got that date, be here with

22  Judge Everingham on the 3rd.  What we will do also is

23  since we're going to pick two juries, we won't show that

24  film, but I will before we start, on the morning of the

25  7th, I will have the district -- have the clerk show the

 1   film from the Federal Judicial Center.

 2              Any objections you wish to make, make

 3   written objections.  I'm sort of like -- I didn't --

 4   didn't do that until I talked to Judge Ron White out in

 5   the Northern District.  He and I were on a committee

 6   together for a year or so, and he says, "I show it every

 7   time."  So, I mean, I believe I'll -- I'll show the

 8   film.  If you wish to file any objection, please feel

 9   free to do so.  Maybe you can raise one I haven't heard

10   yet.  But I wanted you to know that.

11              Then you'll make opening statements.  30

12   minutes a side for opening statements.

13              With respect to using -- of course, any

14   exhibit that has been ruled on by Judge Everingham as

15   being admissible, you can refer to any exhibit that's

16   been ruled on by Judge Everingham as -- if you

17   anticipate -- in your opening statements, I'm sorry.

18   And, of course, during the trial, any exhibit that has

19   been ruled on by Judge Everingham, you don't need to lay

20   any foundation.  You just need to ask whatever questions

21   you feel necessary to place it in context before the

22   jury, because it will already be deemed admitted, and it

23   will be ready.

24              Additionally, now, with respect to

25   demonstrative exhibits, if you have and can exchange

1   demonstrative exhibits before you meet with Judge

2   Everingham so he can rule on those, then you can use any

3   demonstrative exhibits that have been exchanged, and

4   absent objection, you can use those.

5          I've had the situation come up on the

6   morning of trial that parties show up and both sides

7   want to object to the other side's demonstrative

8   exhibits for opening statements.  The Court's manner in

9   which I handle that is demonstrative exhibits

10  necessarily have to be based on evidence that's been

11  introduced and before the jury.  If you can't agree on

12  them at that stage, neither side will get to use them.

13  That's the way that works.  So -- so I didn't want you

14  to think we're going to spend the morning taking up

15  objections at the last minute on demonstrative exhibits.

16         Now, we're going to take up this morning the

17  motions in limine, and the Court's going to take time to

18  listen to your arguments on motions in limine, and when

19  I make a ruling on a motion in limine, it is not a final

20  definitive ruling, but it is a ruling that you are not

21  to touch that -- any of those matters that I've granted

22  or sustained the motion on directly or indirectly

23  without first approaching the bench and talking to me as

24  to why you think that you should be relieved from the

25  application of my order.

1           And sometimes I agree with you that people,

2   quote, open the door or something has come up that I

3   think it's -- has become admissible.  But do not wade

4   off into one of these matters without approaching the

5   bench.  You'll see that my neck starts getting red, and

6   that's just not good for me or for whoever's doing it.

7   And after a couple of times, I start talking to the

8   jury, and it's -- it's very punitive to whoever's

9   violated my motion, and it's intended to be, and so I

10  just want to make that sort of clear to you.

11          And I would encourage you to talk to your --

12  let your experts know that I don't always wait for

13  objections.  This isn't a lecture hall for some

14  professor to give a lecture.  This is a, you know,

15  United States District Courtroom, answer the questions

16  asked and they start getting nonresponsive, I'm liable

17  to be right in the middle of it without an objection

18  because there's -- I've always -- there's two things I

19  thought that were unfair, particularly in state court in

20  this part of the world in trying lawsuits, that was that

21  judges that didn't enforce their motions in limine and

22  judges that didn't control expert s.  And so in the 10

23  plus years I've been on the bench, I've sort of tried to

24  make sure that I didn't make those same type of errors

25  that I complained about so loudly.

1            And so with that, any questions about what

2   we talked about up to this point, clarification?

3            MR. FOSTER:  Your Honor, just a brief --

4   should I go to the podium?

5            THE COURT:  That's all right for this

6   purpose.

7            MR. FOSTER:  Brief question.  Not having

8   tried a case before Your Honor, but some judges have

9   different practices with respect to admissibility of

10  demonstratives.  Some keep out all demonstratives. Some

11  let them all go back in the jury room.

12           THE COURT:  Okay.  Okay.  That's a fair

13  question.  That was going to come up in connection with

14  one of your motions in limine, actually, I think.

15           If -- if I allow a witness to -- you know, a

16  witness says that he believes a demonstrative would help

17  him explain his testimony and it's not -- and it's based

18  on something that's previously been revealed, otherwise

19  can be used as a demonstrative, then I allow it, but

20  it's -- it's for demonstrative purposes only, and it

21  will not go back to the jury room, even upon written

22  requests.

23           And you should know that I did not send all

24  exhibits back.  I send only those exhibits back that

25  they request.  If -- generally, I require from the, you

```
1    know, patent case, if the parties have a notebook for
2    each one of the jurors that has at least the
3    patent-in-suit, and I would recommend to you that you
4    type the claims up.  Aren't there two asserted claims in
5    this case?  Type the claims up on separate pieces -- so
6    they're not such small print as those -- I mean, just
7    asserted claims, nothing more than copying.
8                 And the other requirement is the -- to pull
9    out of the Markman order what the terms that I actually
10   defined.  I haven't looked at this Markman order, but,
11   you know, where I actually define the terms, and that
12   way they have in front of them those terms that will
13   define the claim -- I mean, they have the claims and the
14   terms that have been defined by the Court, and so that
15   needs to be put together for all 10 jurors.
16                Then if y'all -- if you by agreement want to
17   add any other exhibit to the -- to the juror notebook,
18   some that have been admitted, as long as it's by
19   agreement, I'm happy for that to be in the juror's
20   notebook.  However, I do not have hearings to argue
21   about what's -- I'm telling you what I'm going to
22   require in the juror's notebook.  Anything else that
23   goes in there is by agreement, not by -- the Court
24   doesn't rule on anything else.
25                Does that answer your question, Counselor?
```

1          MR. FOSTER:  Yes, it does, Your Honor.

2    Thank you.

3          THE COURT:  Anything from the defense side,

4    any clarification on anything?

5          MR. WELCH:  I just have had one question.  I

6    understood everything you said, Your Honor.  You'll show

7    the film the morning of December the 7th --

8          THE COURT:  That's correct.

9          MR. SPEED:  Okay.  All right.  Thank you.

10          THE COURT:  Before opening statements.

11          MR. WELCH:  Thank you.

12          MR. STANDLEY:  Your Honor, I had one

13    question.

14          THE COURT:  Yes, sir.

15          MR. STANDLEY:  Jeff Standley.  My paralegal

16    would shoot me if I didn't ask this.  She wanted to know

17    if there was a time where we could get with your

18    courtroom staff and go over electronics to make sure

19    that we know what's working and how it works.

20          THE COURT:  Just call Ms. Dupree.  We -- we

21    make the court available to you.  I mean, just make sure

22    that somebody's going to be here and that I'm not in

23    court.

24          I'm going to be out at a judicial conference

25    committee meeting the 1st, 2nd -- yeah 1st, 2nd, and

1   3rd, and on the 4th, there's a judge's meeting in

2   Beaumont, Eastern District judges, so I'll be out that

3   week, unless Judge Everingham has something unusual

4   scheduled in here.

5            Don't we have some school group that wanted

6   to use the courtroom one day?

7            MS. DUPREE:  Yes.

8            THE COURT:  Well, just check with Ms. Dupree

9   here, and she'll give you a time, and if you wanted to

10  do it on the same date that you have the evidentiary

11  hearing before Judge Everingham downstairs, that

12  might -- that's -- if it's available, just any time it's

13  available is fine with the Court.

14           All right.  Let's see, we'll take up first

15  the plaintiff's motion in limine.  I've got this

16  stipulation with respect to -- are there any more

17  agreements that y'all have worked out on any of the

18  plaintiff's motions in limine, other than what's in this

19  stipulation?

20           MR. FOSTER:  Your Honor, if I might, I read

21  this morning on my computer a document which was filed

22  in the last 24 hours, and so I think that there are

23  certain positions that plaintiff has taken -- that the

24  defendants have taken they've backed off on, but I don't

25  have the paper.  I only read it this morning.

```
 1              THE COURT:  Okay.  Well, all right, we'll
 2   just take them up here as we go.  As I understand, let
 3   me make sure from the defendant's standpoint, with
 4   respect to this plaintiff's motion to exclude evidence
 5   and testimony referring to other lawsuits, I read
 6   your -- well, there's two different ways I can read the
 7   second sentence.
 8              I'm not clear.  Are you saying that on the
 9   second sentence of your stipulation that you would offer
10   or this deposition testimony only in impeachment, or are
11   you saying that you're offering it -- want to offer it
12   in your case-in-chief?
13              MR. SPEED:  Your Honor, we --
14              THE COURT:  Please, for the court reporter.
15              MR. SPEED:  Mike Speed.  Your Honor, we have
16   identified some deposition portions from prior lawsuits
17   that we may offer in our case-in-chief.
18              THE COURT:  Okay.  Well, you need to take
19   that up, then, before Judge Everingham.  But tell me for
20   the purpose of this motion in limine, I've read all
21   these replies, and I've got a lot of things rolling
22   through my head, and so I have a bathtub brain, that is,
23   it's got a limited capacity, and I have to get -- part
24   something out before I can get something else in, but
25   are you talking about this -- the financial success or
```

1   failure of this -- of this venture with STI?  Is that

2   what you're -- is that where the testimony goes?

3          MR. SPEED:  That -- that's subject to a

4   different motion, but I'll go ahead and address that if

5   you don't mind.

6          THE COURT:  Well -- well, what is the

7   testimony that -- that you want to use in your

8   case-in-chief?

9          MR. SPEED:  There -- there is some testimony

10  from prior depositions about what Mr. Dorf invented,

11  what he didn't invent, what his concept of what he

12  invented was, some background information about

13  invention date and conception date and -- and matters

14  such as that.

15         The fact that the lawsuit exists is not

16  relevant to us, and we don't want to put that in.  We

17  just want that testimony.

18         THE COURT:  Well, let me make sure that I --

19  all right.  I'm sustaining it as to any lawsuit.  You

20  know, that's what stip -- it's sustained to that.  And

21  if you -- this deposition testimony, when you identify

22  it, you just identify it as prior sworn testimony and

23  the date of it, and don't make any reference that this

24  was given in a lawsuit or anything else.  It was just in

25  a proceeding, and this is the date of it, and you were

1    under oath, okay?

2              MR. SPEED:  Understood.

3              THE COURT:  Now, then, I don't know -- then

4    I want you to have those specific parts marked for the

5    evidentiary hearing -- in other words, at the

6    evidentiary hearing before Judge Everingham, you're

7    going to take up exhibits and deposition cuts.  This

8    will be a deposition cut.

9              MR. SPEED:  I understand, Your Honor.

10             THE COURT:  Since it's a case-in-chief and

11   you're not saying you're -- you anticipate using it more

12   than for impeachment then?

13             MR. SPEED:  Yeah, at this point, Your Honor.

14             THE COURT:  Okay.  All right.  Then Judge

15   Everingham will take up the specific cuts, but that's

16   the Court's instruction to you as far as how to use it,

17   okay?

18             MR. SPEED:  Okay.

19             THE COURT:  Are there any other matters that

20   you believe are covered by your motion that -- that I

21   haven't addressed there, Counselor?

22             MR. FOSTER:  That particular motion.

23             THE COURT:  No, that's what I'm saying,

24   that's just that one.

25             MR. FOSTER:  Do you want me to discuss the

1   other motions now, Your Honor?

2           THE COURT:  No, I just want to ask you, have

3   we taken care of that one as far as you're concerned.

4           MR. FOSTER:  Yes.

5           THE COURT:  We're going to move to the next

6   one right quick.  The other one in my order is dealing

7   with this license -- license issue.  The Court has

8   consistently ruled that a license in connection with a

9   settlement of a lawsuit is not admissible in this Court.

10  Every case we've tried, either myself or Judge

11  Everingham, that's been our ruling.  So I sustain it as

12  to any license that was a part of a settlement

13  agreement.

14          Now, then, tell me what the other objections

15  are from the plaintiff.

16          MR. FOSTER:  Sure.

17          THE COURT:  If you would, from the podium.

18          MR. FOSTER:  Other license issue, Your

19  Honor, before we leave Your Honor's last ruling, I just

20  want to make sure that defendants do not have an

21  argument with us as to which licenses are in settlement

22  of lawsuits.  There is one lawsuit which is actually

23  before Your Honor in which two of the defendants settled

24  out and signed license agreements, but the position they

25  have taken since the documents didn't say settlement

1    agreements, they're license agreements and their witness

2    can testify.

3              Is that still your position?

4              MR. SPEED:  That's our position and then

5    some, Your Honor.  If you don't mind, Your Honor, after

6    he's finished, I'd like to address -- I understand your

7    consistent ruling, but I'd like to address that briefly

8    if you don't mind when he's finished.

9              THE COURT:  Well, if you want to waste your

10   time, that's fine.

11             MR. SPEED:  Okay.  All right.

12             MR. FOSTER:  The next one, there's another

13   license -- five licenses, but that takes care of two.

14             There was one license which involved their

15   client and the deposition testimony we cited was that

16   they were making restitution.  They were settling the

17   issue, but there was not a lawsuit.  So that -- that may

18   be some -- that may be on the borderline of what Your

19   Honor is ruling on, and that's part of our preliminary

20   motion.

21             The other --

22             THE COURT:  Well, does the defendant

23   disagree with the characterization of what the testimony

24   shows?

25             MR. SPEED:  Your Honor, the testimony shows

1    that it was not a settlement.  The testimony shows that,

2    yes, they may have been concerned about infringement,

3    but every license entered into there's a concern about

4    infringement.

5              So there was no lawsuit between Evolution

6    Benefits -- for the court reporter.

7              There was no lawsuit between Evolution

8    Benefits.  There was no accusation of infringement.

9    There was -- Evolution Benefits, we have a patent on

10   this particular process, this processing hub issue.  The

11   testimony said it was not a settlement, and it was

12   entered into, and it was negotiated over a several-month

13   period.

14             THE COURT:  Well, there are issues that

15   you're going to need to take up, as to whether they're

16   admissible or whether they're covered by the motion in

17   limine, before Judge Everingham, then.

18             MR. SPEED:  Okay.

19             THE COURT:  That's -- but I'm giving you my

20   ruling.  Now, if you want to address that ruling, well,

21   go ahead.

22             MR. SPEED:  Can I?  Your Honor, and I am

23   fully aware of your consistent practice on this, and I

24   just want to point out, there seems to be at this point

25   a split in the districts on this very issue, and I don't

1  think the Fifth Circuit has come down either way.

2           It seems to me patent licenses by their very

3  nature cannot be entered into willy-nilly.  They can't

4  be entered into just to settle a lawsuit, because if you

5  go too far with the patent license, you are jeopardizing

6  the monopoly that the patent statute gives you.  You

7  can't license products that aren't covered.

8           You know, you can take a license for, okay,

9  I'll license, and I may never do it.  That's allowed.

10  But once you start down the process of licensing

11  products, marketing products, requiring marketing and

12  license agreements, paying per product, then you're

13  getting into the statutory requirements of what's

14  appropriate for a license.

15           So just because you entered into that

16  license because someone threatened you with litigation

17  or threatened you with infringement should not make a

18  license agreement per se admissible.  It may go to

19  weight.  I certainly understand that, but the issue is

20  should it -- should it be inadmissible.

21           And I unfortunately or fortunately,

22  depending upon your point of view, you and I have a

23  difference of opinion on that, so -- but I certainly

24  understand --

25           THE COURT:  Let me tell you what my

1   experience is, Counselor, sometimes the plaintiff is the

2   one that wants to introduce it, and sometimes it's the

3   defendant.  So it's just a question, as I like to put

4   it, it's a question of whose ox is getting gored, but

5   that's not really my -- that doesn't have anything to

6   with my decision.

7          MR. SPEED:  I understand.

8          THE COURT:  I made some decision early on,

9   and I've stayed with it because it's part of my

10   philosophy as a district judge at this level that I'm

11   supposed to be consistent as I possibly can unless the

12   Circuit says I'm wrong, and they haven't, so your

13   motion -- my ruling stands.

14          MR. SPEED:  I under -- I understand.  So

15   just so I'm clear, Your Honor, we'll address which

16   licenses are covered within your motion in limine --

17          THE COURT:  That's right.  Which one --

18   you're -- you're contending that some are not the result

19   of a settlement.

20          MR. SPEED:  There were two that were

21   definitely not, there were two that definitely were, and

22   there's this one between Humana and Evolution Benefits

23   that they argue was and we argue that wasn't.

24          THE COURT:  Y'all need to take that up in

25   the evidentiary hearing.

1          MR. SPEED:  Okay.

2          THE COURT:  Because Judge Everingham, he

3     knows what I'm going to rule before I tell him on this

4     issue.

5          All right.  Now, if there's some more --

6     other matters covered under --

7          MR. FOSTER:  Your Honor?

8          THE COURT:  Does that take care of --

9          MR. FOSTER:  Sure.  There were two other

10    licenses.  Let me just describe them briefly.  One is

11    easily described.  There were two companies, Robert

12    Dorf, the patentee, is the owner of Alexsam.  He had

13    another company called ICF, which he also owned, and the

14    patent was licensed from one of those companies to the

15    other.  And since they're wholly-owned companies and not

16    really operating under the patent, our argument, based

17    on the authority we cited, is that's not the kind of

18    license agreement which would be proper evidence on what

19    would have been agreed to between parties such as Humana

20    and such as Alexsam if they're doing a hypothetical

21    license agreement, which typically comes up in patent

22    agreements.  It's a closed agreement between two wholly

23    owned companies, representative.

24          And the other license unless --

25          THE COURT:  Go ahead.

1           MR. FOSTER:  -- you have questions about

2    that.  The other license is the Mastercard license.

3    That is not a settlement license, quite correct, and we

4    discuss that in our papers.  That is a license that does

5    not cover the claims of this patent.  Those cover the

6    activation claims that were involved in the other

7    lawsuit.

8           THE COURT:  They don't cover the claims that

9    are asserted in this lawsuit.  Are they claims that are

10   in the patent?

11          MR. FOSTER:  They cover other -- the --

12   the --

13          THE COURT:  They're other inventions within

14   the same patent?

15          MR. FOSTER:  Yeah.  The license which is

16   attached to the papers gives them a right to process

17   activations, and they had to pay a certain amount of

18   those activations.

19          THE COURT:  It's overruled as to that

20   license.

21          MR. FOSTER:  Okay.

22          THE COURT:  You know, that goes to the

23   weight, and that's not...

24          MR. FOSTER:  Then other than the ICF

25   license, which I just addressed, Your Honor, that

1    completes our presentation on that motion.

2              THE COURT:  Well, I'll let you -- that needs

3    to be brought -- I need to discuss that with Judge

4    Everingham.  We may have had that arise, and in order to

5    be consistent, I'll let him tell you about what we're

6    going to do on that.

7              MR. FOSTER:  Thank you, Your Honor.

8              THE COURT:  But you're saying -- do

9    you dispute -- from the defendant, do you dispute that

10   it was a license agreement between two wholly-owned

11   companies or subsidiaries?

12             MR. SPEED:  I do not, Your Honor, but part

13   of the testimony that we were talking about from

14   Mr. Dorf was a deal -- a discussion about how that was

15   negotiated at arms length, how we believe that was a

16   reasonable royalty to have between --

17             THE COURT:  Okay.  Well, that needs -- that

18   definitely needs to be brought up with Judge Everingham

19   because you're now telling me something I didn't hear.

20             MR. SPEED:  Right.

21             THE COURT:  Okay.  All right.

22             Okay.  This next motion that I've got before

23   me is this -- about the financial dispute that Dorf had

24   with, I guess, STI -- SSTI?  Is that what that motion

25   goes to?

1          MR. FOSTER:  Your Honor, I -- I guess I'll

2     address it first since it's our motion, and -- and I'm

3     not sure how much you agree or disagree between the

4     parties based upon my readings of documents, which --

5          THE COURT:  Well, I guess -- I'd like to

6     just hear from the defendant what it is you would like

7     to introduce that would violate this motion.  I guess

8     that's sort of my -- to make sure I understand the

9     dispute.

10          MR. SPEED:  Your Honor, can I lay just a

11     little bit of background?

12          THE COURT:  Sure.

13          MR. SPEED:  SSTI is the company that built

14     the processing hub for Mr. Dorf when he attempted to

15     create an embodiment of some of the claims in this

16     patent.  SSTI was hired by Mr. Dorf to, you know,

17     program, create, select the hardware, et cetera.

18          What we're concerned about is testimony

19     coming in from the plaintiff of the nature, I invested a

20     lot of sweat and energy and money in coming up with the

21     concept and reducing to practice and creating a -- a

22     workable product.

23          Well, if that information comes in and we're

24     not permitted to cross examine or bring in the testimony

25     from the person that he hired, Mr. Levenson, hired to

 1   help build the system, and then ultimately didn't pay, I

 2   think it's prejudicial to us for Mr. Dorf to stand up

 3   and say, "I spent all this money, and I had this great

 4   investment," but he didn't because he didn't pay for it.

 5   And Mr. -- and to be honest with you, it didn't work.

 6   Mr. Levenson testified that the system they built was

 7   ultimately junk, and it didn't work.

 8           So what we're concerned about, because I've

 9   seen patent plaintiffs and the inventors get up and pat

10   themselves on the back about what I did and how I did it

11   and how good it was and how much money I spent and how

12   much sweat I put into this.  And if we get into that and

13   we're not allowed to use the information from SSTI to

14   counter that, it seems to me prejudicial to the

15   defendant.

16           THE COURT:  Well, are you talking -- well,

17   I sort of see this as sort of a dividing line between

18   if Dorf -- if the inventor gets up here and says, "This

19   was -- you know, this was a successful product", or, you

20   know, my -- then -- then, obviously, they've opened the

21   door to show that it's not a successful product.

22           On the other hand, if he gets up and says,

23   you know, "It was hard work, and I worked hard, and I --

24   making this invention, I put a lot of my time and effort

25   into it," he hadn't opened the door yet, it doesn't seem

1   to me.  I guess it depends on how far he goes.

2              MR. SPEED:  To some -- to some degree, Your

3   Honor, I agree with that, but I do think --

4              THE COURT:  Well, let's talk about the

5   degree that you don't agree with it, then.

6              MR. SPEED:  Well, there's also I think we

7   should have the ability to irrespective of whether the

8   door is opened, and that may goes to the $650,000.00

9   that he didn't pay SSTI, but I do think I should be

10   allowed to introduce testimony from SSTI to say, you

11   know, a material part of the reduction to practice of

12   this invention was done by SSTI.  So that's a separate

13   issue.

14              The first issue is should I be allowed to

15   question Mr. Dorf about not paying the $650,000.00 if --

16              THE COURT:  Well, I don't believe you should

17   absent --

18              MR. SPEED:  Absent opening the door, and

19   I -- I understand that, and I'm with you on that, Judge.

20              THE COURT:  Okay.

21              MR. SPEED:  The second issue, though, is I

22   believe I should be able allowed to say and bring in the

23   testimony from SSTI that says, "Hey, this is what I did.

24   This is my aspect.  This is" -- you know, you're going

25   to hear testimony Mr. Dorf isn't a programmer.  He's

1   not a -- has a background in computers, and processing

2   hub is the novel feature in this patent.  And so I think

3   it's important to hear from the person that actually

4   built that.

5           THE COURT:  What's your position -- why is

6   he wrong on that, Counselor?

7           MR. FOSTER:  Your Honor, I'm a little bit

8   surprised.  In the last 24 hours, they have filed papers

9   with the Court saying that they would not claim -- that

10  the -- and make any arguments with respect to incorrect

11  inventorship.  This was one of the grounds of our

12  motion, and I assume Mr. Speed was involved in those

13  papers.

14          I thought the inventorship issue was out of

15  the case, and they're trying -- if I hear them

16  correctly, trying to put it back in, but if it's back

17  in, I'll address it.

18          THE COURT:  Well, I thought inventorship was

19  out.

20          MR. SPEED:  Inventorship is out, Your Honor,

21  but I think it's -- and that's -- and that's not the

22  reason why we -- we want to put on some context on who

23  did what, who was responsible for bringing -- what --

24  what pieces parts did Mr. Dorf build?  What pieces parts

25  did he hire out?

1              It's not necessarily inventorship per se to

2      that that Levenson should be an inventor.  That --

3      that's not what we're going to argue.  That's not part

4      of this case.  But what should be allowed is there's

5      going to be testimony from Mr. Dorf about what he did,

6      what his concept was, what his reduction to practice is.

7      We know that testimony is going to come in, because I've

8      never seen a patent case where it's not.

9              Well, if the material part of that reduction

10     to practice is hiring a third party, I should be allowed

11     talk to that person and have that person's testimony

12     played before the jury.

13             THE COURT:  Well, from my perspective, I'm

14     sustaining the motion until I hear the evidence that you

15     think that's going to cause it -- I'm sustaining the

16     motion at this point, and then -- it's going to depend

17     on what Dorf says.

18             MR. SPEED:  Thank you, Your Honor.

19             THE COURT:  They may open the door.  Those

20     that have tried lawsuits here, you can take Mr. Rugg, he

21     knows that -- he's heard me say, "You can't crack the

22     door."  You know, once it's -- it's either opened or

23     closed in my mind, and once it gets cracked open, then

24     it's wide open, so --

25             MR. SPEED:  Thank you, Your Honor.

1                    THE COURT:  Okay.  But it's sustained at

2      this point.

3                    MR. FOSTER:  Thank you, Your Honor.

4                    THE COURT:  All right.  Let's talk about,

5      let's see, I guess is this next one on -- Mr. Norwood?

6      Is that what we've got?  Or do we have two of them here

7      together?  Yeah, does the next one deal with -- deals

8      with Norwood's testimony?

9                    Humana's agreeing that they're not going to

10     try to rely on the declaration, so it's sustained to

11     that, or to allow their expert, Mott, will not rely on

12     the declaration, but Humana wants to introduce the

13     testimony of Norwood.

14                   So why do you say that that would -- why

15     shouldn't they be allowed to do that, Counselor?

16                   MR. FOSTER:  Your Honor, the reason for

17     that, just to give a little 50 to 30 seconds of context,

18     there are a number of publications which they will

19     introduce into evidence, and because they are more than

20     a year before the application was filed, they're prior

21     art, whether they're true or not, and we don't object to

22     that.

23                   The Norwood testimony is -- to the extent it

24     repeats what's in the publications is corroborated by

25     the publications, and we don't object to that.  Where

1    the dispute is, is that at his deposition, Mr. Norwood

2    went beyond that and in some cases contradicted what's

3    in the publications.  In other cases had details that

4    the publications did not addressed.  And although

5    admissibility would not normally be an issue in this

6    case because it's a prior invention of prior use under

7    the case we cited, particularly the Finnegan case from

8    the Federal Circuit, that oral testimony has to be

9    corroborated by something other than -- by something

10   other than the witness himself, and it's only as to

11   those details that the witnesses had in which are not

12   corroborated that we're seeking to keep out of evidence

13   because there would not be sufficient evidence to

14   support the defense.

15            THE COURT:  So -- well, now, okay.  Let

16   me -- this is a Florida State guy; is that --

17            MR. FOSTER:  Florida State.

18            THE COURT:  Okay.  And so you're -- they

19   cited in their response numerous items where they said

20   this -- here's the corroboration of the testimony.

21            Now, you're saying -- what you're saying to

22   me is you've got to have specific corroboration to every

23   detail that he testifies to?  You think that's what the

24   rule is?

25            MR. FOSTER:  I don't know about every

1  detail, Your Honor, but if there's a limitation of the

2  claim which is not in the publication and the only

3  evidence that the Florida State system had that

4  particular feature is the oral testimony of this

5  individual who claims to have put it in there and

6  there's no corroboration of that, then that -- that's a

7  very important feature of their presentation which has

8  not been corroborated.

9            If I might, the Finnegan case, which we

10  cited in our papers, has precisely this situation where

11  the -- the patent was a combination of A, B, C, and D,

12  and the document relied upon the corroboration only of

13  A, B, and C.  And they had this witness testify what

14  the Federal Circuit did, and the reversing court below

15  it, said, "Look, there's no corroboration to D.  Without

16  D, then -- then this prior art assembly doesn't hold

17  water."

18            So that's -- that's the basis -- I think

19  it's very complicated, I know, to separate out all the

20  various issues, and all I can suggest to the Court is

21  that if the Court feels that uncorroborated testimony as

22  to an important part of the invention should not go in,

23  then either the parties would have to work that out or

24  the plaintiff can put in the evidence that they can show

25  they can corroborate it, they -- the Court would have to

1   fix that in some way.

2           THE COURT:  Well, I've been known to fix

3   that very problem, but I like to avoid those kind of

4   fix-its.  I don't enjoy those fix-its.

5           But what's the defendant's position about

6   what he's -- he's claiming is that -- that the Florida

7   State system, there is no corroboration of certain

8   elements of the claim.

9           MR. SPEED:  Your Honor, we would disagree

10  with that.  We -- we think there's contemporaneous

11  publications that were either authored or cited to by

12  Mr. Norwood which corroborates every element of the

13  claim.

14          THE COURT:  Well, this is going to be in

15  your defense part of the case, correct?

16          MR. SPEED:  Yes, Your Honor.

17          THE COURT:  Well, I mean, then you don't

18  have any problem with the Court directing you, then, to

19  say that before you offer any evidence of any claim

20  limitation being present in the Florida State system

21  that you first provide corroborating evidence before --

22  can you do that?

23          MR. SPEED:  I believe we can.  Again, I'm

24  not sure that the Finnegan case is dispositive in the

25  sense that every element has to be corroborated

1   separately.

2           THE COURT:  Well, I'm not saying -- well, if

3   there's -- it's got to be corroborated in some fashion.

4   I don't know what you mean by separately.

5           MR. SPEED:  We certainly have documentation

6   to support all of the elements that Mr. Norwood

7   testified about, so we'll -- we'll --

8           THE COURT:  That's the Court's directive,

9   then.

10          MR. SPEED:  Okay.

11          THE COURT:  All right.  So it's sustained

12  for -- to the extent that you can't offer it without

13  first laying a proper predicate by having corroborating

14  evidence.

15          MR. SPEED:  Understood, Your Honor.  To the

16  extent -- if I may get a clarification.

17          THE COURT:  Sure.

18          MR. SPEED:  To the extent there may -- and I

19  believe this not to be the case, but I just want to be

20  clear.  To the extent, let's say, for example, there's

21  one element that he didn't talk about, that shouldn't

22  preclude his testimony as to all the other elements

23  because you can combine references from an obviousness

24  determination, and Mr. Mott, our expert, relied on, you

25  know, evidence to determine an obviousness

1    determination.  For example, let's say that --

2              THE COURT:  What I was trying -- what

3    I intend -- I didn't make a ruling on what Mott could

4    offer.

5              MR. SPEED:  I understand.  I'm just saying,

6    Your Honor, let's suppose that -- there's -- there's

7    five elements, I believe, in this claim, and let's say

8    that I sure as day get you the exact corroboration and

9    what plaintiff wants on four of those five elements from

10   Mr. Norwood but not the fifth one.

11             I should -- I -- I believe I should be

12   allowed to still put on Mr. Norwood's testimony about

13   those four elements and the corroboration related to

14   those.

15             THE COURT:  I'm -- I'm saying that you can

16   do whatever elements you can corroborate from him.

17             MR. SPEED:  Okay.  All right.

18             THE COURT:  I'm not saying that you have to

19   get all of your testimony on that from Norwood.

20             MR. SPEED:  Right.  Because in reading the

21   plaintiff's motion, it was my belief in reading their

22   motion that if I couldn't get all five, I couldn't have

23   them at all, and I just wanted to make sure that wasn't

24   the case.

25             THE COURT:  Well, you're going to have to

1   get number five somewhere else.

2              MR. SPEED:  And I got it, Your Honor.

3              THE COURT:  Okay.  We understand each other.

4              All right.  Your next one is -- does that

5   take care of all your motions in limine?

6              MR. FOSTER:  I think so, Your Honor.  That's

7   all I have notes on.

8              THE COURT:  Yeah, that's -- that's what I

9   have.

10             Okay.  We'll take the defendant's.  Okay.

11  It seems the one that's generated the most paper is the

12  one dealing with precluding the use of documents and

13  witness produced after fact discovery.

14             So, you know, I've seen your papers going

15  back.  You've got it narrowed down.  What is -- what

16  documents are now in dispute?

17             MR. SPEED:  There's still, Your Honor,

18  probably better than 20 documents that are in dispute,

19  many of which are website documents, documents from Visa

20  documents on the sale of or the types of point of sale

21  devices that may or may not have existed at certain

22  times.

23             These are documents that Humana did not see

24  in discovery, that were not turned over or relied upon

25  by any expert of Alexsam, and we took the depositions of

1   both their invalidity and their infringement experts.

2          In addition, Your Honor, we still have the

3   issue of the two witnesses, one of which -- and to be

4   honest with you, I'm still reading all the papers that

5   were filed.  I read most of them, but one of which was

6   attached to Alexsam's response to our summary judgment

7   of noninfringement, a witness we'd never -- never heard

8   about until they were put on the witness list.

9          So we're concerned, Your Honor, that there

10  are documents, there's testimony, there's witnesses that

11  we haven't heard from, we don't know where they came

12  from, and all of this is post discovery.

13         THE COURT:  Well, first of all, with respect

14  to the documents, the contract between your client and

15  the bank, you're not objecting to that?

16         MR. SPEED:  Your Honor, no, I'm not

17  objecting to the contract between Humana and UMB, I

18  believe, or Bank of America.

19         THE COURT:  Bank of America.

20         MR. SPEED:  Yeah, Your Honor, Bank of

21  America.

22         THE COURT:  And then you're not objecting to

23  those documents that are on -- from your own website?

24         MR. SPEED:  Your Honor, I'm not going to

25  object to those documents.

```
 1              THE COURT:  You're objecting from the group
 2    of documents that the plaintiff describes as, quote,
 3    publicly available?  We'll get to the witnesses, but I'm
 4    trying to get the classes of documents.
 5              MR. SPEED:  Right, Your Honor, there's
 6    several documents -- I don't know if you want me to
 7    approach.  I'll show you just one example.
 8              THE COURT:  Well, I just -- I want to make
 9    sure I got them classified.
10              MR. SPEED:  Okay.  Good.  There are several
11    documents that were apparently downloaded from various
12    websites, either the Visa websites or websites
13    illustrating the sale -- the point of sale devices, et
14    cetera.  We've never seen those.  We don't know the
15    purpose of what they're going to be used for.
16              THE COURT:  All right.  I want -- I want to
17    hear about -- that's the class that we're really talking
18    about.
19              MR. SPEED:  Yes, Your Honor.
20              THE COURT:  I mean, however, there doesn't
21    seem to be a dispute actually, as I read the papers, of
22    what numbers those are.
23              MR. SPEED:  I don't believe -- I mean, I
24    believe we all understand what numbers are the new
25    documents.
```

```
 1                THE COURT:  Yeah, I want to hear from the
 2    plaintiff this theory because documents are, quote,
 3    publicly available that they are not required to be
 4    identified prior to close of discovery.
 5                MR. FOSTER:  Actually, Your Honor, I
 6    apologize if you got the impression that -- that was our
 7    position.  We are mentioning they are publicly available
 8    for different reasons.
 9                But let me -- let me tell you what we're
10    talking about here.  We received their expert report
11    after the close of -- first of all, during discovery, we
12    produced all the documents we had.  This is not a matter
13    of withholding anything.
14                THE COURT:  I understand that, but --
15                MR. FOSTER:  Okay.  So after the close of
16    discovery, we get their expert report.  We look at it
17    and we say, "Oh, no, no, no," and so we then go out onto
18    the internet and download documents which we would use
19    to cross examine this expert with, and we, of course,
20    produce them to Humana as soon as we find them.
21                The reason they weren't produced during
22    discovery is we didn't have them.  We didn't look for
23    them because at that point, we did not have this report
24    from them.  So this is the category which we're arguing
25    about.
```

1          THE COURT:  Well, they're saying that

2     they're using these documents as affirmative proof of

3     the existence or nonexistence of infringement.

4          MR. FOSTER:  Well, to give you --

5          THE COURT:  Now, you're telling me that

6     you're going to use them solely to  -- for cross

7     examining and impeachment of something that the expert

8     has said.

9          MR. FOSTER:  Well, let me put it all

10    together.  Before we got their expert report, our expert

11    had put together his testimony, and then the way it

12    works is then after the close of discovery, it might be

13    different.  The deadlines were different and there

14    wasn't -- after the close of discovery, his expert comes

15    out with a report arguing with our expert.  So then we

16    go to the internet to find exhibits that we could use.

17    True, our expert could use them, as well, in

18    anticipation of what the other guy's expert could say,

19    or we could wait until their expert gets on and use them

20    that way.

21          Either way, we -- we had to dig this stuff

22    out, so we had to be prepared to confront the issue.  I

23    mean, the problem is this is a dynamic process, and we

24    had to prepare for trial rather than -- if the expert's

25    dates had been earlier -- well, before the close of

```
 1   discovery, this issue wouldn't have arisen, but because
 2   the report came out after the close, here we are, and
 3   they're basing the motion on the fact that the discovery
 4   deadline had past.
 5               THE COURT:  Well, let's hear from the
 6   defendant.
 7               MR. SPEED:  I just want to make -- be clear,
 8   Alexsam never deposed our -- any of our experts in this
 9   case, so our experts never have been confronted, at
10   least as of this date, with any of these documents.
11               What's going on here, Judge, is what we
12   believe, and this is addressed in our summary judgment
13   motion, a complete failure of proof that Alexsam has on
14   the issue of point of sale devices, and we -- we're --
15   that motion is pending.
16               We saw a response that was filed yesterday
17   that included affidavits from one of these witnesses we
18   had heard of, and to be honest with you, a declaration
19   from their noninfringement expert that goes -- and we're
20   going to address that -- that goes well beyond whatever
21   we heard in his deposition or Rule 26 report, and what
22   we believe is happening is they had this failure of
23   proof, and now they are scrambling around trying to
24   download information from the internet to see if they
25   can somehow come up with that proof.  It's proof that
```

1    they could have had.  Some of the documentation is not

2    new.

3              But to sit here and say, "Well, we didn't

4    get the expert report," or "We didn't know we needed

5    it," well, it's their burden to prove infringement,

6    Judge.  It's their burden to have that information

7    there.  And so I am sitting here trying to figure out,

8    one, how are they going to use these documents?  Where

9    did they come from?  Who's going to testify about them?

10   And I've just seen them -- some of them in the last two

11   weeks.

12             So I don't believe that the -- the plaintiff

13   ought to be able to use these documents.  I don't

14   believe that the plaintiff ought to be able to create

15   expert declarations in response to a summary judgment

16   motion based upon these documents that aren't in --

17             THE COURT:  That's a different -- that's a

18   different issue right now.

19             MR. SPEED:  But -- but that aren't any Rule

20   26 report.  So they had the opportunity to take the

21   deposition of our client -- or our expert.  They had the

22   opportunity to put this stuff -- as soon as they thought

23   they needed it, they should have gone out and got it and

24   sent it to us.  We've never seen this until we got the

25   exhibit list.

1                   THE COURT:  How long after the rebuttal --

2     the rebuttal expert report did these documents come?

3                   MR. SPEED:  We learned about these

4     documents, Your Honor, when we started exchanging

5     exhibit lists.

6                   THE COURT:  Why would you wait until then?

7     I mean, you had -- how long was that after the rebuttal

8     expert report?

9                   MR. FOSTER:  I'm looking at the papers --

10    there's a period of several weeks we're dealing with,

11    and we produced documents on the rolling basis, Your

12    Honor.  So if I -- I think that's in -- the precise

13    dates are in the papers.

14                  MR. SPEED:  Your Honor, I'll note just for

15    the record, if you don't mind, while they're looking,

16    some of these documents were downloaded from the

17    internet on November 10th of this year.  And they're

18    trying get them in now.  And by looking at these

19    documents, these are certainly documents that probably

20    have been on the internet for a long time.

21                  THE COURT:  Well, the motion is sustained as

22    to using those documents in their case-in-chief.

23    They're not going to be considered.

24                  MR. SPEED:  Okay.

25                  THE COURT:  Now, then, if they want to try

1   to impeach -- you've been given notice of them.  If

2   they're solely for impeachment of your expert after

3   they've rested their case, well, we'll take them up at

4   that time.

5            MR. SPEED:  I understand.

6            THE COURT:  Understand the ruling?

7            MR. SPEED:  Yes, sir.  How about the

8   witnesses?

9            THE COURT:  All right.  Let's talk about

10  this.

11           Who are these witnesses?  If I could hear

12  about who they are.  Where did they come from?

13           MR. FOSTER:  Well...

14           THE COURT:  No, we're not talking about the

15  motion for summary judgment now.  I'm just talking about

16  for trial witnesses.

17           MR. FOSTER:  Who they are is an easy answer.

18  They're two individuals that work in our law office, and

19  let me tell you why they were named as witnesses.

20           Humana produced in the course of this case

21  an enormous data dump of all of the transactions done

22  with Humana cards, enormous numbers.  The problem we had

23  is we have to take the Humana information and put

24  together what's called, I think, a Federal Rule of

25  Evidence 1006 exhibit, a summary of it.  So we did that.

1            And one of the witnesses is just a paralegal

2    in our office who will explain, not necessarily to the

3    jury, but to the Judge as part of admissibility how the

4    summary -- how the summary of the underlying Humana

5    documentation was compiled, what the columns mean.  If

6    we can simply make it a presentation to the Court of how

7    the Rule 10 -- 1006 exhibit was compiled, that will be

8    fine.  She wouldn't have to testify to the jury.  But

9    that was the purpose of doing that.  That's the sole

10   purpose of her testimony.

11            THE COURT:  That's one of the witnesses?

12            MR. FOSTER:  Right.  The other witness is a

13   witness, again, a paralegal from our office who went out

14   to -- in the marketplace and looked at point of sale

15   devices after -- again, after getting their expert

16   report.  Talking about point of sale device, he went out

17   and looked at them and took pictures and -- no

18   pictures -- just looked at them.

19            THE COURT:  Well, my problem is that my

20   recollection is I issued a claim construction order on

21   this matter back in August, didn't I?

22            MR. FOSTER:  Yes, Your Honor, the end of

23   August.

24            THE COURT:  And it was -- whether I'm right

25   or wrong, that's yet to be determined, but I did what I

1   did, and I know what the elements were, and, you know, I

2   know what we're talking about.  This point of sale

3   device -- was it -- what's the year, '97 or --

4            MR. FOSTER:  Right July '97.

5            MR. SPEED:  Yes, sir.

6            THE COURT:  That was certainly something

7   that the Court, with my limited capacity, thought about

8   a long time before I put that in there.  So that's been

9   an element that needed to be proven.  It just seems

10  terribly -- I don't see any -- what is the exception to

11  the rules?  That's what -- why -- under what theory am I

12  supposed to not apply the rules?  That's -- that's the

13  question.

14          MR. FOSTER:  I'm not suggesting that you

15  shouldn't apply the rules, Your Honor.  Are we talking

16  about --

17          THE COURT:  Well, I'm talking about as to --

18  I've already -- I think I've ruled as to the documents,

19  but as to these -- what you've gone out and created here

20  at the last minute or somebody's going to testify -- I'm

21  just not clear about why it is I'm going to allow these

22  late -- you've got some documents that they went out,

23  took pictures of.  You've got -- I guess you've got some

24  receipts of some type.

25          MR. FOSTER:  That's correct.

1            THE COURT:  And so those were obviously not

2    produced late in the game, and I'm -- I'm asking you

3    under what exception should I allow those?  You know,

4    why would I not apply the rules of this Court?

5            MR. FOSTER:  I accept that, Your Honor.

6            THE COURT:  Okay.  Those are excluded.

7            MR. FOSTER:  Okay.  Now, the --

8            THE COURT:  Now, then, the summary of a --

9    I'm not clear on what that is, so you present that in

10   detail.  I don't have that much time here today, and

11   that's not altogether y'all's fault.  We got started

12   about 15 or 20 minutes late, but I'm not going to take

13   that much time on it, but I'm going to let Judge

14   Everingham rule on whether or not this summary -- do you

15   not even know that for the defendant?  You don't -- you

16   didn't realize that's what it was, that it was a summary

17   of this voluminous document that y'all -- I mean, that's

18   what I'm hearing here.

19           MR. SPEED:  Your Honor, we found out it was

20   going to be a summary.

21           And is it Ms. Ellis?

22           MR. FOSTER:  Right.

23           MR. SPEED:  Ms. Ellis submitted a

24   declaration last night in her -- in their responsive

25   motion for summary judgment.  Now, we know what she's

```
 1   summarizing, and to be honest with you, I haven't quite
 2   figured out what she looked at and what she -- how she
 3   summarized it yet, and it does appear, based on her
 4   declaration, that she was talking about a little bit
 5   more than that.
 6              I mean, we were aware that a summary was
 7   going to be made, but we haven't been made aware of what
 8   the summary evidence was.  Certainly, we'll address, if
 9   you want, to the propriety of the summary evidence, but
10   if this Court or Judge Everingham is inclined to allow
11   this witness, we certainly would like to talk to her
12   before she's put on the stand here in Marshall, and I'm
13   not -- I'm not saying I'm giving up my request to have
14   her excluded completely, but if the Court is so inclined
15   to allow that summary evidence, plus I think there's an
16   issue of bias having your own -- you know, your own
17   paralegal, it seems to be a big risk to me on the
18   plaintiff to have their own paralegal get on the stand.
19              THE COURT:  I'm very concerned about that,
20   because there is a Texas Supreme Court case that deals
21   with paralegals having same function as lawyers and
22   whether or not a lawyer can be a witness, a material
23   witness.  I think the same rules apply to the paralegal.
24              MR. FOSTER:  If I can help out, Your Honor,
25   in two ways.  First off, we don't want to call her
```

1  anyway.  We have these summaries, and if Judge

2  Everingham rules them in, then the witness doesn't have

3  to be there, but the other thing we can do is we can

4  have anybody -- it's Humana's documents, and somebody

5  says we added them up and we did this, if -- if they can

6  accept that the conclusions are fine, then I guess we

7  resolved that, but if someone has to testify how they

8  handled the calculations of the underlying Humana

9  information, that can all be done before Judge

10  Everingham and nobody has to testify about it.  We just

11  want to get the summaries into evidence.

12          THE COURT:  Well, but who's going to explain

13  to the jury what the summary means?  I mean, who are

14  these summaries for, that's what -- who's going to --

15  you think a jury can look up there and say -- who's

16  going to say once -- let's just say, okay, we're going

17  to let -- we're going to let this testimony be heard

18  outside the presence of the jury, and we rule then

19  that -- or allow this summary to be presented, well, how

20  is it going to be -- who is going to testify about it

21  before the jury?

22          MR. FOSTER:  Well, I can have one of the --

23  I can have one of the witnesses already on the list

24  do that and explain what the columns mean.  I just

25  thought -- I just thought that having the person who had

1   actually done the -- the calculations and stuff would be
2   better, but, again, that's -- that's fine.  If we can --
3   if we can get the summaries, then that's fine, and as
4   far as the presentation part, I'll have to wrestle with
5   that, Your Honor, as to which witness would be the best
6   one.
7            THE COURT:  Well, you can take it up with
8   Judge Everingham.  I'm just not sure about that.  I'd
9   like for counsel -- I mean, if it's truly a summary of
10  your own documents, I don't -- that -- that doesn't seem
11  like that's a great surprise, actually, Counselor.
12           MR. SPEED:  Your Honor, I'll commit to you
13  that I will meet and confer with Mr. Foster.  If that's
14  the case, we'll look into that.  I'll commit to you that
15  we will do that as to whether these are proper summaries
16  of our documents.  As I sit here today, because like I
17  said, the first time I saw them --
18           THE COURT:  I'm not asking you to commit one
19  way or the other.  I'm just --
20           MR. SPEED:  But I'll commit to that meet and
21  confer, but the summaries are new, as well, and, you
22  know, we'll be prepared to address it with --
23           THE COURT:  Well, I'll tell Counsel this,
24  what you should be prepared to do, if he wants to
25  take -- after y'all confer, if he wants to take the

1   deposition of that witness as to how they were done, if

2   you've got some real question, then you need to be

3   prepared to produce that witness here in Marshall,

4   Texas, next Thursday afternoon, the 3rd after --

5           MR. SPEED:  Okay.

6           THE COURT:  So you may need her here to

7   testify in front of Judge Everingham anyway, if y'all

8   ever unable to resolve it.

9           MR. FOSTER:  Thank you.

10          MR. SPEED:  Your Honor, may I address one

11  more thing on that?

12          THE COURT:  Yes.

13          MR. SPEED:  Just because we end up deposing

14  her, doesn't mean we still believe that she should be

15  permitted to testify at trial in front of a jury.

16          THE COURT:  I understood that.

17          MR. SPEED:  Okay.

18          THE COURT:  And I've got a very serious

19  question in my own mind about that.

20          MR. SPEED:  Okay.

21          THE COURT:  But nobody said anything about

22  it yet, but it's bothering me.

23          All right.  Let's see, does Humana have

24  another motion for -- in limine here that I need to

25  address?

1          MR. SPEED:  Your Honor, we don't have a

2     motion in limine.  There is a pending Daubert motion

3     related to Alexsam's expert on damages.

4          THE COURT:  I'll give you a ruling on that

5     next week because that's just -- the briefing on that

6     just --

7          MR. SPEED:  Just closed yesterday, Your

8     Honor.

9          THE COURT:  Closed yesterday, and --

10          MR. SPEED:  And we also have a pending --

11          THE COURT:  Have motion for summary

12     judgment.

13          MR. SPEED:  Right.

14          THE COURT:  And I'll give you a ruling on

15     that before we go to trial, also.

16          MR. SPEED:  Your Honor?

17          THE COURT:  I guess we're going -- do I

18     anticipate you're going to have some motion to strike

19     these summaries?

20          MR. SPEED:  I'm going to have a motion to

21     strike affidavits containing the summary, as well as the

22     motion to strike the expert report or the expert

23     declaration that's attached to Alexsam's response, and I

24     was going to request in that motion, or I can do it now,

25     I guess I'll do it now since I'm here, an expedited

1   briefing on that motion to strike.  We can have that

2   into you tomorrow morning.

3              We believe that the expert on

4   noninfringement went well outside the bounds of his

5   expert report and his deposition.

6              THE COURT:  Well, then the plaintiff's

7   response to that is due Tuesday of next week at 5:00

8   o'clock Central Daylight Time.  And that way I'll try to

9   get everything ruled on before we start to trial.

10             Okay.  You're putting me on a real -- we're

11  on a short time frame.

12             MR. SPEED:  We'll keep the motion short,

13  Your Honor.

14             THE COURT:  I've already put you on notice

15  of that limited capacity of what I can take in and

16  understand.

17             MR. SPEED:  Your Honor, I'm familiar -- well

18  familiar with your record, and you're selling yourself

19  real short, to be honest with you.

20             THE COURT:  Those that know me well, know

21  I'm only telling you truth.  The Court always tells the

22  truth, Counselor.

23             MR. SPEED:  Absolutely.

24             THE COURT:  All right.  What else do we have

25  to talk about that y'all need?  Anything else from the

1   plaintiff here this morning?

2              MR. FOSTER:  Looking around for suggestions,

3   I don't think so, Your Honor.

4              MR. WELCH:  Nothing further from -- nothing

5   further from the defendant, Your Honor.

6              THE COURT:  Well, I'll see y'all Monday

7   morning, and y'all have a nice -- happy Thanksgiving.

8   Travel safely.

9              MR. RUGG:  Thank you, Your Honor.

10              COURT SECURITY OFFICER:  All rise.

11              (Recess.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        CERTIFICATION

 2

 3            I HEREBY CERTIFY that the foregoing is a

 4    true and correct transcript from the stenographic notes

 5    of the proceedings in the above-entitled matter to the

 6    best of my ability.

 7

 8

 9
      SHELLY HOLMES                          Date
10    Deputy Official Reporter
      State of Texas No.: 7804
11    Expiration Date:    12/31/10

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```